IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK D. SMITH AND<br>ELISSA C. SMITH,<br><br>       Plaintiffs,<br><br>       v.<br><br>WESTFIELD INSURANCE CO.,<br><br>       Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>NO. 06-3077 |




M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                November 27, 2007

Plaintiffs Mark and Elissa Smith ("Smiths") bring suit against Defendant Westfield Insurance Company ("Westfield") based on Westfield's denial of the Smiths' homeowners insurance claim. On June 22, 2006, the Smiths filed suit in the Philadelphia County Court of Common Pleas. Westfield removed the case to this Court on the basis of diversity jurisdiction. The suit alleged breach of contract and bad faith on the part of Westfield. The Court granted Westfield's motion to dismiss the bad faith claim and also granted the Smiths leave to amend the complaint to fix the date of the loss with respect to the breach of contract claim. Thereafter, the Smiths filed an amended complaint.

After discovery was completed, the Court held a day-long bench trial at which it heard testimony and received documentary evidence. The Court now enters the following findings of fact

and conclusions of law. <u>See</u> Fed. R. Civ. P. 52(a).

I. FINDINGS OF FACT

1. Plaintiffs are the Smiths who reside at 1442 Knightsbridge Drive in Blue Bell, Pennsylvania ("the Premises").[1]

2. Defendant Westfield is organized under the laws of the state of Ohio with a principal place of business at One Park Circle, Westfield Center, Ohio.

3. On January 8, 2003, the Smiths took out a homeowners insurance policy from Westfield covering the Premises ("Policy 1").

4. On January 8, 2004, the Smiths renewed Policy 1 for an additional year ("Policy 2").[2]

5. Approximately six months after moving into the Premises, the Smiths noticed water penetrating the interior of the Premises in several areas.[3]

6. On June 1, 2003, the Smiths noticed water leaking into

---

[1] The Premises were constructed by Gambone Brothers Construction Company ("Gambone") and were completed January 8, 2003.

[2] The relevant terms of Policy 1 and Policy 2 are identical. There is no question that Policy 2 was an "occurrence policy" in full force at the time when the leaks occurred. Under an "occurrence policy," the insured is indemnified for acts or occurrences which take place within the policy period. <u>St. Paul Fire & Marine Ins. Co. v. Barry</u>, 438 U.S. 531, 535 (1978).

[3] Whether the leaks were attributable to faulty construction or natural degrading of material is not relevant to this Court's ultimate legal conclusion.

their second floor bathroom and in the rear staircase of the Premises.[4]

7. In December of 2003, the Smiths noticed the basement window leaking.

8. In May of 2004, the Smiths observed water leaking into their dining room and living room.

9. By May of 2004, the Smiths had notice of water leaks in at least 5 different parts of the Premises.

10. The immediate cause of the water leaking into the Premises was the failure of the stucco surrounding the frame of the Premises generally to keep out water from rain and snow.[5]

11. On March 15, 2006, the Smiths filed a claim with Westfield seeking indemnification for water damages suffered throughout the Premises.[6] This was the first time the plaintiffs notified Westfield of any damage to the Premises caused by water leaks.

---

[4] All discovered leaks were included on a punch-list that was submitted to Gambone through the punch-list coordinator, Jamie Whittenburg. A punch-list is essentially a list of problems the homeowner submits to his general contractor.

[5] This was confirmed both by the testimony of Jerry Yedinak, a construction expert hired by the plaintiffs to determine what was causing the water leaks, and by James Dugan, the contractor hired to perform the stucco remediation necessary to remedy the water leak problem.

[6] Prior to notifying Westfield of the water leaks within the Premises, the Smiths asked Gambone to fix the construction of the Premises. By all accounts, although it attempted to, Gambone was unsuccessful in stopping the water leaks. See supra nn.3-4.

12. On May 16, 2006, Westfield denied the claim on the grounds that the claim was not covered by Policy 2 and that it was barred by a two-year suit limitation clause.

13. On June 22, 2006, the Smiths filed suit contending that the denial of the claim constituted a breach of contract under Policy 2 and bad faith on the part of Westfield.[7]

14. Westfield defended, inter alia, that the suit was barred because it was not brought within two years of the date of loss as required under Policy 2.[8]

15. Policy 2 defines an "occurrence" as:

> An accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. Bodily Injury; or b. Property Damage.

16. Policy 2 contains a time limitation of suit as follows:

> No action can be brought against us unless there has been full compliance with all of the terms under Section 1 of this policy and the action is started within two years after the date of loss.

17. The damages in question are $3,800 for the removal and replacement of windows and door trims, $2,600 for the painting of the windows and door trims, $1,200 for wall damage that occurred during demolition, $350 for cleaning, $4,404 for damaged OSB board and $2,489 for landscaping.

---

[7] The Court dismissed the bad faith claim prior to trial.

[8] Although Westfield asserts an array of defenses, because the suit limitation defense suffices for Westfield to prevail, the Court need not address its alternative arguments.

II.  CONCLUSIONS OF LAW

1. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  In this action, Pennsylvania state substantive law applies.  See Erie R.R. Co. v. Tompkins, 34 U.S. 64 (1938).

2. Although there were numerous defenses raised by Westfield, Policy 2's two-year suit limitation clause is controlling.[9]

3. It is not disputed that by the time the Smiths had filed their lawsuit against Westfield, more than two years had elapsed since they first noticed the water leaking into the Premises.  Thus, the Court must decide whether each instance of water leaking in the Premises represented separate occurrences, or a single occurrence, and, if it is concluded that the water leaking was a single occurrence, the Court must assign a date to that occurrence.

A) Multiple Occurrences v. Single Occurrence

4. The Third Circuit has accepted and adopted a "cause of loss" test in resolving single versus multiple occurrence disputes.  Liberty Mut. Ins. Co. v. Treesdale Inc., 418 F.3d 330,

---

[9] In its opinion denying defendant's motion for summary judgment, this Court acknowledged that suit limitations like the one in question are uniformly upheld under Pennsylvania law. Smith v. Westfield Ins. Co., 2007 U.S. Dist. LEXIS 43996 (E.D. Pa., Jun. 15, 2007)(citing Gen. State Auth. v. Planet Ins. Co., 346 A.2d. 265, 267 (Pa. 1975)).

334 (3d Cir. 2005); see also Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982) (holding that "the fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence").[10]

5. The general rule is that an occurrence is determined by the cause or causes of the resulting injury. Using this analysis, the court asks if "there was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." Appalachian Ins. Co., 676 F.2d at 61 (citations omitted).

6. "The accepted purpose of defining an act or event is to limit liability, and in the insurance industry occurrence is commonly understood to mean all loss caused by a single act or related events." Scirex Corp. v. Fed. Ins. Co., 313 F.3d. 841, 852 (3d Cir. 2002).

7. Similar to the provision in Policy 2, the contract in Appalachin defined an "occurrence" as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally result in personal injury,

---

[10] The "cause of loss" doctrine has been implemented in a number of contexts. In Liberty Mutual, the insurance policy in question covered asbestos related injuries. In Appalachian, the policy covered sex discrimination. Scirex Corp. dealt with employee negligence. In each case, the multiple injuries sustained were held to be the result of a single occurrence.

property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one Premises shall be deemed one occurrence." 676 F.2d at 59.

8. In this case, all of the damages to the Premises were caused by defects in the stucco, whether as a result of natural wear and tear, or by faulty construction.

9. All of the occasions of water leaking in the Premises are attributable to a single occurrence; the permeability of the stucco.

B) <u>Date of Loss</u>

10. Having established that the damages to the Premises were the result of a single occurrence, the Court must employ the "effect test" to determine the date of the loss. <u>Liberty Mutual</u>, 418 F.3d at 337.

11. For insurance purposes, damages "occur" when they "first manifest themselves in a way that could easily be ascertained by reasonable diligence." <u>Keystone Automated Equip. Co. v. Reliance Ins. Co.</u>, 535 A.2d 648, 651 (Pa. Super. 1988).[11]

12. By May of 2004, it was readily apparent that the

---

[11] The Court recognizes that the date of loss is the point at which damages arise, not when the condition giving rise to the damages was created or developed. <u>Keystone Automated Equip. v. Reliance Ins. Co.</u>, 535 A.2d 648, 651 (Pa. Super. 1988).

Premises could not keep out water. From June of 2003 to May of 2004, repeated instances of leaking had occurred at five different locations throughout the Premises.

13 This Court concludes that the date of loss, in light of both Keystone and Liberty Mutual, was at some point after June 1, 2003, when the water leaks in the Premises first manifested themselves, but certainly no later than May of 2004, when the leaks had become a continuous and repeated problem in at least five rooms in the Premises.

14. Since the suit was not brought until June 22, 2006, it was not brought within two years of the date of the loss.

III. CONCLUSION

Because the Smiths' suit was not brought within two years of the date of the loss, the Court determines that the suit is barred by the two-year limitation of suit provision in Policy 2. Judgment shall be entered in favor of Westfield and against the Smiths. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK SMITH AND ELISSA SMITH, | : | CIVIL ACTION NO. 07-3077 |
| Plaintiffs, | : | |
| v. | : | |
| WESTFIELD INSURANCE COMPANY, | : | |
| Defendant. | : | |

### O R D E R

**AND NOW**, this **27th** day of **November, 2007**, pursuant to Fed. R. Civ. P. 52(a) and for the reasons set forth in the findings of fact and conclusions of law, judgment is entered in favor of the defendant and against the plaintiffs.

**AND IT IS SO ORDERED.**

_____
EDUARDO C. ROBRENO, J.

ENTERED

CLERK OF COURT